IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,                     No. 08-mj-313 GGH

    vs.                             <u>ORDER</u>

SHANNONJON BENTON,

        Defendant.

_____/

*Introduction and Summary*

        Defendant seeks to suppress the fruits of a search incident to arrest at a VA facility, a search which revealed a knife whose blade was in excess of three inches, and marijuana. Defendant was charged with these possession offenses, each with a six month incarceration maximum in an information filed September 9, 2008.[1] For the reasons given herein, the motion is denied.

*Facts*

        The facts of the case are not in serious dispute. Defendant came onto the Mather VA medical facility in her truck to pick up a prescription. She was accompanied by a Mr. Hwa

---

[1] The charges were based on VA regulations: 38 CFR 1.218(b)(18) (possession of marijuana) and 38 CFR 1.218 (b)(39) (possession of a knife whose blade exceeded three inches).

1

who had also brought his dog along for the ride. The truck came to the attention of VA law enforcement because of the dog's presence, which itself is a violation of VA regulations, 38 CFR 1.218(a)(11), unless the dog is present to aid a blind owner. No allegation is made here that such was the situation with Mr. Hwa's dog. There can be no dispute under the facts that probable cause existed to believe that defendant, along with Hwa, had brought the dog onto the VA facility in her truck.

Officer Molitor caused a page to be made in the medical facility for Ms. Benton on account of the dog problem, and she returned to the truck. The officers permitted defendant to go back into the facility to retrieve her prescription, but just afterwards another officer (Schuman) walked around the truck and peered inside. He discovered what appeared to be a glass pipe in the form of a cigarette, one which the officer suspicioned was used to smoke illegal substances. Officer Schuman entered the truck and retrieved the pipe at which time the Officer believed he smelled marijuana. There was a residue in the pipe which the officers believed to be marijuana residue (although there has been no testing confirmation of this fact known to the undersigned). Hwa was asked to whom the pipe belonged, and after initially casting the ownership on defendant, Hwa thought better of this remark, and confessed to owning the pipe himself. Hwa was arrested at this point for introduction of a controlled substance (marijuana residue) onto the VA facility. At this time, a complete search of the truck was performed, revealing no contraband, but only the existence of clear plastic baggies in which no illegal substances or residue were found.

More officers appeared on the scene by this time, and Officers Keller and Speer were instructed to enter the hospital and arrest defendant for "possession of paraphernalia."[2] The officers did as directed, and after bringing defendant back to her car, incident to that arrest,

---

[2] The government asserts, without evidence, that defendant was to be arrested for possession of a controlled substance on account of the residue in the pipe. If the government desires to contest the words of the police report attached to defendant's motion, it is incumbent on the government to produce some evidence to that effect.

2

1  searched Benton's purse which turned up another glass pipe as well as marijuana and a knife
2  whose blade exceeded three inches.  At the time of the search, the purse was in Benton's
3  possession.  Defendant was handcuffed and placed for a short time in an officer's patrol car.
4  Despite discovering that defendant was driving with a suspended license and did not have
5  accident insurance, defendant was only cited for the marijuana/knife and then released.  It is
6  unknown whether defendant was permitted to drive off the facility despite her suspended license.
7  *Discussion*

8         Well established now is the proposition that a search incident to arrest is lawful.
9  United States v. Robinson, 414 U.S. 218, 94 S. Ct. 467 (1973).  Both a search of the person and,
10 within certain parameters, the search of an area proximate to the person is permitted.  If an arrest
11 is made, the relative minor nature of the crime does not contract the right to search incident to
12 arrest.  Id. at 234-235, 94 S. Ct. at 476.  Nor can it be said that a person may not be arrested for
13 minor crimes as opposed to merely cited.  Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.
14 Ct. 1536 (2001).  Two equally applicable rationales exist to support the right to search incident to
15 arrest – the potential for weapons on the person (exactly what was found in this case) and the
16 need to preserve evidence which may be on the person.  Robinson, 414 U.S. at 234, 94 S.Ct. at
17 476.  A bag or purse being held by an arrestee is clearly subject to search incident to arrest.  See
18 United States v. Burnette, 698 F.2d 1038, 1049 (9th Cir. 1983); United States v. Gallop, 606 F.2d
19 836, 838 (9th Cir. 1979).

20        Thus, up to now, the seizure of defendant's purse and discovery of the marijuana
21 and knife is rather unremarkable as a search incident to arrest.  However, defendant focuses her
22 suppression efforts on the alleged illegal searches of the car, and the asserted, resultant lack of
23 probable cause to arrest defendant.  The court need not focus on the initial search of the car since
24 it agrees with defendant's later argument that once Hwa admitted ownership of the pipe and was
25 arrested for it, probable cause to arrest defendant for drug possession was lacking.
26 \\\\\

The government argues that Hwa's initial equivocation on ownership of the pipe authorized a lingering belief on the part of the officers that defendant may have owned the pipe, and therefore possessed drugs on her person. Not only is this disproven from a subjective standpoint – the officers believed Hwa's later ownership assertion and arrested *him*, but it is lacking from an objective standpoint. First, the government's argument is belied by the facts wherein even the officers on the scene were not instructed to arrest defendant for possession of controlled substances. Rather, the officers were (mistakenly) instructed to arrest the defendant for "possession of paraphernalia."[3]

But more importantly, even if the instructing officer meant to say – arrest defendant for possession of a controlled substance on account of the residue in the pipe – a reasonable officer on the scene would have no reason to believe, based on the facts before him, that there was a joint ownership of the pipe. Hwa never intimated as such, first saying that defendant had sole ownership, and then admitting his sole ownership. The government's argument that the officers were permitted to conjure up a joint ownership/possession theory of the pipe is simply not objectively reasonable. While a suspicion of such might have been justified, one cannot say that there was probable cause to believe that defendant at any time had drugs in her possession, residue or otherwise, based on a repudiated assertion by Hwa that defendant owned the pipe, and the relatively slight evidence of drugs found in the truck (lingering marijuana smell and residue in the pipe only).

However, this does not end the search issue; rather, the fact that the VA officers could have arrested defendant for bringing a dog onto VA property eviscerates any finding that

\\\\\

\\\\\

\\\\\

---

[3] All parties agree, or at least the government does not contest, that mere possession of paraphernalia like a smoking pipe is not a crime.

defendant's search incident to arrest was unlawful because probable cause was lacking for the stated cause of arrest.[4]

      Defendant might argue that the officers who arrested defendant did not arrest her for bringing a dog onto VA property, and they would be correct in this factual assertion. However, so long as a valid basis to arrest defendant existed, the subjective beliefs of the officers as to why they were arresting defendant became inconsequential. Devenpeck v. Alford, 543 U.S. 146, 125 S. Ct. 588 (2004). See also Tatum v. City and County of San Francisco, 441 F.3d 1090, 1094 (9th Cir. 2006): "(See Devenpeck v. Alford, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ('[a police officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause'. Under Devenpeck, the subjective reason that Officer Smith arrested Fullard is irrelevant so long as the available facts suggested that Fullard was committing a crime."). Here, there can be no doubt that defendant had committed the dog offense proscribed by the VA regulation.

      One further point need be explored, and that is the ambiguous nature of the dog offense as a "crime." The VA regulations plainly prohibit persons from bringing non-seeing eye dogs onto a VA facility. 38 CFR 1.218(a)(11). Further there is no doubt that such conduct subjects the person(s) bringing the dog onto the VA facility to be "arrested and removed." 38 CFR 1.218(b). The remainder of section (b) of the regulation in proscribing dog possession as a crime is less than clear in that the specific criminal penalties set forth for the laundry list of prohibited specific conduct does not directly or indirectly implicate dog possession. In all

---

[4] Although relating to the court in its papers that bringing the dog onto VA property was an arrest-worthy offense (and there is no doubt that by allowing the dog to ride in the truck defendant brought the dog onto VA property), the government did not argue this theory as a reason to deny the motion to suppress. Thus, the undersigned is left with the decision, as he often is, with the dilemma of whether to find a waiver of this otherwise valid theory of search incident to arrest, or whether to simply apply binding precedent to the facts as presented by the parties. Because the government did assert that bringing the dog onto VA property was unlawful, and could subject the "bringers" to arrest, the court will follow through with the legal ruling which flows from this assertion.

5

1 | likelihood, although arrest and removal for dog possession is authorized, no criminal penalties
2 | could be assessed.

3 | However, because no contention is made that the VA regulation permitting "arrest
4 | and removal" (without more) is invalid, the undersigned has determined that the possible lack of
5 | criminal penalties for dog possession does not detract from the need to search incident to arrest.
6 | And, a close reading of the "incident to arrest" cases, such as <u>Robinson</u>, <u>supra</u>, indicates that the
7 | "safety to the officer" rationale for allowing the search incident to arrest would stand as
8 | forcefully in the "arrest and remove" context as it does in the "arrest and prosecute" context.
9 | Indeed, safety may be the primary rationale. Nothing in <u>Robinson</u> indicates that the preservation
10 | of evidence rationale must co-exist with the safety to officer rationale.

*Conclusion*

For the foregoing reasons, defendant's motion to suppress (Docket # 6) is denied. A status conference is set in this case before the undersigned for February 9, 2009 at 9:00 a.m.

DATED: 01/21/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
benton.supp